# EXHIBIT 5

Lori E. Andrus (SBN 205816)
lori@andrusanderson.com
Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com
Audrey C. Siegel (SBN 286771)
audrey.siegel@andrusanderson.com
Leland H. Belew (SBN 293096)
leland@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:   (415) 986-1400
Facsimile:   (415) 986-1474

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.T., through her guardian *ad litem*,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>BABYBJORN AB*, et al.*<br><br>　　　　　　Defendants. | Case No.  2:20-cv-04517-MCS-KS<br><br>**PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO BABYBJORN AB, SET NO. ONE (1)** |

PROPOUNDING PARTIES:　　Plaintiff O.T.

RESPONDING PARTIES:　　　Defendant BABYBJORN AB

SET NUMBER:　　　　　　　　One (1)


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

　　　　Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff O.T., through her guardian *ad litem*, Natalie Trujillo ("Guardian Trujillo") hereby demands that Defendant BabyBjörn AB respond in writing to the following document requests, that the responses be signed and verified by the person responding to them, and produce and/or permit Plaintiff to inspect and/or copy the requested materials within 30 days.  The place for production or inspection shall be

at the law offices of Andrus Anderson, LLP, 155 Montgomery Street, Suite 900, San Francisco, California 94104, or such other places as agreed to by the parties.

## DEFINITIONS

As used herein, capitalized terms shall have the following meanings:

1. "PLAINTIFF" is used to refer to O.T.

2. The terms "DEFENDANT," "YOU," "YOURSELF" and "YOUR" refer to Defendant BabyBjörn AB ("BabyBjörn"), along with ANY present or former parent companies, subsidiaries, divisions, affiliates, officers, directors, partners, employees, agents or other person(s) acting on YOUR behalf.

3. "ANY" shall encompass "all," and "ALL" shall accompany "any."

4. "BABY CARRIER," when capitalized, refers to the soft-sided wearable infant carrier(s) designed, manufactured, marketed, and/or sold by YOU. When the term is used without capitalization, "baby carrier" refers generally to soft-sided wearable infant carrier(s), regardless of who designed, manufactured, marketed, and/or sold them.

5. "BABY PRODUCT," when capitalized, refers to any product designed, manufactured, marketed, and/or sold by YOU that can hold or restrain an infant. This includes, but is not limited to, wearable baby carriers, slings, swaddle blankets, strollers, swings, high chairs, baby seats, car seats, travel systems, "bouncer" seats, and booster seats.

6. "COMMUNICATION" shall mean and refer to ANY oral, written, spoken or electronic transmission of information, including but not limited to: meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, SMS, MMS, postings of any type, messages on "social networking" sites (including, but not limited to, Facebook, Google+, Instagram, and Twitter), shared applications between cell phones, laptops, desktops, or networked computers, instructions, conferences, seminars or ANY other exchange of information between YOU and ANY other person or entity.  With respect to oral

communications, this includes ANY DOCUMENT evidencing such communications.  "Communication" shall also include, without limitation, all originals and copies that are provided by YOU or to YOU by others.

7.  The terms "DOCUMENT" and "DOCUMENTS" mean ANY writings and ALL other items identified in Fed. R. Civ. Proc. 34, however produced or reproduced, of every kind and regardless of where located, which are in YOUR possession, custody, or control, or in the possession, custody or control of ANY servants or agents of YOU or YOUR attorneys.  The terms include electronically-stored information ("ESI"), including but not limited to electronic mail ("email"), web mail, text messages, instant messages, intranet messages, random-access memory (or RAM) content, social network communications, voicemail, html files (including but not limited to information downloaded/printed from the internet), internet bookmarks, browser search history, data, data compilation, databases, data processing cards or tapes, computerized data, computer diskettes, and information otherwise contained on a computer's hard drive, disks or backup tapes, video tapes, audio tapes, view-graphs, and ANY information maintained on digital, electronic, magnetic or other media, including but not limited to information maintained on web-based applications/accounts, thumb drives, local storage devices, personal drives, shared drives, cellphones, handheld devices, tablets, laptops, desktop computers, work computers, or home computers used for work, and ANY other summaries, schedules, memoranda, notes, statements, letters, telegrams, interoffice communications, reports, diaries, worksheets, lists, photographs, images, drawings, graphs, charts, or indices, audio recordings, partial or complete reports of telephone or oral conversations, transcripts or minutes, compilations, tabulations, studies, analyses, or other writings or recordings of ANY type.  The term includes ANY originals, ALL file copies, ALL other copies no matter how prepared, and ALL drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.  A draft, or non-

identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has nonconforming notes, marginal annotations or other markings, and ANY preliminary versions, drafts or revisions of the foregoing, is a separate DOCUMENT within the meaning of the term.  The term includes ANY associated METADATA and ANY NATIVE FORMAT of the DOCUMENT.

8. The term "METADATA" means the data embedded in electronic versions of a DOCUMENT.  It includes ALL ESI that describes or defines the DOCUMENT that is not generally visible in the ordinary electronic display or printing of the document.  METADATA may identify or include: the name, format, size and location (e.g., directory, structure or file path name) of the DOCUMENT; the date the file was created and of each modification; the date the DOCUMENT was last accessed; the content of the original DOCUMENT and of each modification; the identity of the computer used to create or modify the file; the file permissions (e.g., who can read the data, who can write to it, or who can run it); the internal coding that the DOCUMENT creator or another person with access might use; the "blind copy" recipients and others in an e-mail strand; the comments, markups and revisions; the author and owner name; and the names of those who have edited the DOCUMENT, and other information, including, but not limited to, records of past versions and drafts.

9. The phrase "NATIVE FORMAT" as it relates to the production of electronic data, means the file format in which the DOCUMENT is ordinarily read and written by its related software application.

10. The phrases "RELATING TO," "RELATES TO," "REFERRING TO" and "REFERS TO" mean evidencing, constituting, reflecting, connected with, in respect of, showing, comprising, including, containing, describing, considering, discussing, regarding, setting forth, studying, analyzing, evaluating, summarizing, touching upon, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

11. Unless otherwise indicated, the "RELEVANT TIME PERIOD" for the information sought is the date YOU first engaged in ANY activity that resulted in YOUR eventual design, manufacture, or testing of YOUR BABY CARRIERS.

**FORM OF PRODUCTION**

12. To the extent that ANY DOCUMENT requested herein is maintained by YOU in electronic format (i.e. ESI) or physical format (also described as Physically Stored Information or "PSI"), Plaintiff requests that such DOCUMENT be produced in NATIVE FORMAT with METADATA unless otherwise agreed to by the parties.

13. If YOU decline to produce ANY ESI on the ground that the ESI is not reasonably accessible, YOU are requested to identify the ESI, describe the nature and contents of the ESI, and explain the basis of YOUR objection.

14. If YOU object to part of a request and refuse to answer that part, state YOUR objection and respond to the remaining portion of that request. If YOU object to the scope or time period of ANY request and refuse to respond fully with respect to the entire scope or time period as requested, then state YOUR objection, identify what YOU contend is the appropriate scope or time period, and confirm that YOU are producing at a minimum the responsive documents for the scope or time period that YOU contend is appropriate.

15. With respect to ANY requested DOCUMENT that YOU refuse to produce in responses to these requests, please provide an electronically searchable table (e.g., Excel spreadsheet) including the following information:

    a. the full identity of the DOCUMENT, including:
        i. date of the DOCUMENT;
        ii. its title (if ANY);
        iii. the identity/ies and position(s)/job title(s) of its author(s);
        iv. the identity/ies and position(s)/job title(s) of ALL of its addressees and recipients;

      v. the type of DOCUMENT (e.g., letter, memorandum, etc.);

      vi. the general nature of the DOCUMENT (i.e., a brief description of the DOCUMENT without disclosing its contents);

      vii. the individual or source from whom or which YOU obtained it; and

      viii. its present location and identity of its custodian;

  b. the specific factual basis which gives rise to the refusal, and the specific legal ground on which the refusal is based;

  c. whether the refusal is directed to the entire DOCUMENT or part thereof;

  d. if YOUR refusal is directed to the entire DOCUMENT or part thereof;

  e. if YOUR refusal is directed to part of the DOCUMENT, identify the specific part(s) of the DOCUMENT to which YOUR refusal is directed;

  f. a separate entry for each e-mail in an email string, and

  g. a separate entry for each attachment to a DOCUMENT.

16. If ANY DOCUMENT requested herein includes both privileged and non-privileged material or information, produce the entire DOCUMENT with only the portion of the DOCUMENT containing privileged material redacted.

17. If ANY DOCUMENT is redacted in ANY way, in whole or in part, clearly identify the portion of the DOCUMENT that has been redacted by including the word "REDACTED" prominently on or in that portion of the DOCUMENT. Redactions can only be made on the basis of attorney-client privilege, the work product doctrine, or third-party privacy grounds. Redactions must be reflected on the privilege log.

18. If ANY of the requested DOCUMENTS cannot be located or produced after exercising due diligence to secure the information, please so state and specify the reasons for YOUR inability to respond fully, and provide ALL information YOU

have concerning the non-produced DOCUMENTS. If YOUR response or document production is qualified or limited in ANY respect, please set forth ALL of the details of such qualification or limitation.

19. ALL DOCUMENTS produced in response to these Requests shall be either:

   a. Organized and labeled to correspond with the number of the specific Request to which the DOCUMENTS are responsive, or

   b. Produced in the order and in the format and manner that they are kept in the usual course of business with Bates numbers applied in a manner that does not alter the document's METADATA or its optical character recognition ("OCR") in ANY way.

20. All information sought shall include all information that relates in whole or in part to the RELEVANT TIME PERIOD, or to events or circumstances during such RELEVANT TIME PERIOD, even though dated, prepared, generated, or received prior to the RELEVANT TIME PERIOD.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1.:**

Produce ALL DOCUMENTS reflecting or constituting complaints, reports, legal claims, lawsuits, or other documentation providing notice of hip dysplasia or other hip-related injury(/ies) allegedly caused by one of YOUR BABY CARRIERS, including, but not limited to, reports made by consumers to YOU, either directly, through the filing of a legal claim, or through a consumer protection agency (e.g. Better Business Bureau, CPSC).

**REQUEST NO. 2.:**

Produce ALL DOCUMENTS RELATING TO YOUR decision to discontinue the "Original" BabyBjörn baby carrier.

**REQUEST NO. 3.:**

Produce ALL DOCUMENTS RELATING TO the discontinuation of the

"Original" BabyBjörn baby carrier.

**REQUEST NO. 4.:**

Produce ALL DOCUMENTS RELATING TO the question of whether YOUR BABY CARRIERS can cause, contribute to, and/or exacerbate hip dysplasia or other hip-related injuries, including, but not limited to, notes, correspondence, or memoranda, whether internal or with third parties.

**REQUEST NO. 5.:**

Produce ALL DOCUMENTS RELATING TO the question of whether YOUR BABY PRODUCTS can cause, contribute to, and/or exacerbate hip dysplasia or other hip-related injuries, including, but not limited to, notes, correspondence, or memoranda, whether internal or with third parties.

**REQUEST NO. 6.:**

Produce ALL DOCUMENTS RELATING TO the "M" position (also known as the "Spread-Squat" position or the "Jockey" position).

**REQUEST NO. 7.:**

Produce ALL COMMUNICATIONS between YOU and anyone else, including, but not limited to, ANY scientist(s), academic(s) or physician(s) RELATING TO hip dysplasia or other hip-related injuries.

**REQUEST NO. 8.:**

Produce the entire Consumer Product Safety Commission ("CPSC") product registration file for the "Original" BabyBjörn baby carrier, including, but not limited to, ANY proposed labeling, proposed changes or supplements to labeling, and ANY COMMUNICATIONS RELATED TO same.

**REQUEST NO. 9.:**

Produce ALL COMMUNICATIONS with the CPSC regarding ANY potential link of hip dysplasia or other hip-related injuries associated with use of YOUR BABY CARRIERS and/or YOUR BABY PRODUCTS.

//

**REQUEST NO. 10.:**

Produce ALL DOCUMENTS RELATING TO ANY CPSC investigation(s) of, or inquiry(/ies) about, hip dysplasia or other hip-related injuries RELATING TO YOUR BABY CARRIERS and/or YOUR BABY PRODUCTS.

**REQUEST NO. 11.:**

Produce ALL DOCUMENTS RELATING TO ANY CPSC investigation(s) of or inquiry(/ies) about the labeling or marketing of YOUR BABY CARRIERS.

**REQUEST NO. 12.:**

Produce ALL DOCUMENTS RELATING TO inquiries, investigations, regulatory actions taken by, or actions requested of YOU, by ANY country's governmental agencies RELATING TO hip dysplasia or other hip-related injuries to infants RELATING TO YOUR BABY CARRIERS.

**REQUEST NO. 13.:**

Produce ALL DOCUMENTS RELATING TO whether YOUR BABY CARRIERS are "hip healthy" and/or "do not cause hip dysplasia" including, but not limited to, ANY DOCUMENTS, data, and/or opinions which support such a statement, ANY DOCUMENTS, data, and/or opinions which would tend not to support that statement, or correspondence, notes, or memoranda, whether internal or with third parties.

**REQUEST NO. 14.:**

Produce ALL DOCUMENTS constituting communications between YOU and anyone affiliated with the International Hip Dysplasia Institute, including but not limited to, current employee(s), former employee(s), director(s), board member(s), agent(s), consultant(s), or expert(s).

**REQUEST NO. 15.:**

Produce ALL DOCUMENTS RELATING TO the International Hip Dysplasia Institute's contemplated, proposed or actual consideration for "hip healthy" designation RELATING TO ANY of YOUR BABY CARRIERS.

**REQUEST NO. 16.:**

Any and all agendas, minutes and/or notes (taken prior, during or after) of meetings (whether in person, telephonic, or virtual) with any representative(s) of the International Hip Dysplasia Institute.

**REQUEST NO. 17.:**

Any and all calendar entries regarding meetings with any representative(s) of the International Hip Dysplasia Institute.

**REQUEST NO. 18.:**

Any and all documents relating to the "research partnership" with the International Hip Dysplasia Institute.

**REQUEST NO. 19.:**

Any and all documents relating to the hip development research conducted by studying the Original Babyjörn®, BabyBjörn® One, and Manduca® baby carriers.[1]

**REQUEST NO. 20.:**

Produce ALL DOCUMENTS reflecting ANY payment(s) to the International Hip Dysplasia Institute, including but not limited to: money donated by YOU, financial pledges, donation requests from the International Hip Dysplasia Institute to YOU, or funds YOU paid for consideration of ANY YOUR BABY CARRIERS for potential "Hip Healthy" designation.

**REQUEST NO. 21.:**

Produce ALL DOCUMENTS reflecting ANY payment(s) to ANY group conducting research on a possible link between hip dysplasia or other hip-related injury(/ies) and baby carriers, including but not limited to: money donated by YOU, financial pledges, donation requests from said group(s) to YOU, and funds YOU paid for testing or consideration of YOUR BABY CARRIERS by said group(s).

---

[1] This "New Babywearing Research" is referenced on IHDI's website at https://hipdysplasia.org/new-babywearing-research-for-hip-development/.

-9- Case No. 2:20-cv-04517-MCS-KS
PLTF'S REQ. FOR PROD. OF DOC. TO BABYBJORN AB SET NO. ONE (1)

**REQUEST NO. 22.:**

Produce ALL DOCUMENTS RELATING TO the design of the "Original" BabyBjörn baby carrier, including, but not limited to, design/model drawings, engineering calculations, and design specifications. This request includes, but is not limited to: actual, proposed, considered, and rejected designs.

**REQUEST NO. 23.:**

Produce ALL minutes and records of each design review meetings RELATING TO the "Original" BabyBjörn baby carrier.

**REQUEST NO. 24.:**

Produce ALL DOCUMENTS RELATING TO the safety of the "Original" BabyBjörn baby carrier.

**REQUEST NO. 25.:**

Produce ALL patents or patent applications for the "Original" BabyBjörn baby carrier.

**REQUEST NO. 26.:**

Produce ALL patents for YOUR Baby Carrier One, Baby Carrier Harmony, and Baby Carrier Move/Free.

**REQUEST NO. 27.:**

Produce ALL DOCUMENTS RELATING TO ALL testing, whether proposed, considered, performed or discontinued by YOU, for the "Original" BabyBjörn baby carrier. This shall include, but not be limited to, proposed protocols for studies, final protocols, COMMUNICATIONS with ANY third parties conducting such testing, and the results of the testing in whatever form.

**REQUEST NO. 28.:**

Produce ALL DOCUMENTS RELATING TO decisions, or reflecting ANY discussion of, whether to include language in the labeling or marketing materials for YOUR BABY CARRIERS REGARDING hip dysplasia or other hip-related injuries, including, but not limited to, notes, correspondence, or memoranda,

whether internal or with third parties.

**REQUEST NO. 29.:**

Produce ALL DOCUMENTS RELATING TO proposed or draft language about hip dysplasia or other hip-related injuries for the labelling or marketing materials for YOUR BABY CARRIERS.

**REQUEST NO. 30.:**

Produce ALL DOCUMENTS RELATING TO public pronouncements RELATING TO the safety of the "Original" BabyBjörn baby carrier, whether actually used or in draft form.

**REQUEST NO. 31.:**

Produce ALL DOCUMENTS reflecting or constituting ANY public pronouncements RELATING TO the safety of YOUR BABY CARRIERS, including, but not limited to:

    a. Advertising materials;

    b. Marketing materials; or

    c. Recordings, transcripts, storyboards and/or ANY written/visual manifestation of statements considered for, or actually placed on, radio, television, the internet or other video, visual, or audio media.

**REQUEST NO. 32.:**

Produce ALL DOCUMENTS reflecting or constituting ANY public pronouncements RELATING TO the "Original" BabyBjörn baby carrier, including, but not limited to:

    d. Advertising materials;

    e. Marketing materials;

    f. Recordings, transcripts, storyboards and/or ANY written/visual manifestation of statements considered for, or actually placed on, radio, television, the internet or other video, visual, or audio media.

//

**REQUEST NO. 33.:**

Produce ALL manuals and/or instructional material (in all mediums) for the "Original" BabyBjörn baby carrier from 2008 to 2013.

**REQUEST NO. 34.:**

Produce ALL versions of packaging for the "Original" BabyBjörn baby carrier from 2008 to 2013.

**REQUEST NO. 35.:**

For the time period of 2010 to the present, produce DOCUMENTS sufficient to show your internal organizational structure(s), including but not limited to, organizational charts.

**REQUEST NO. 36.:**

For the time period of 2010 to the present, produce ALL of YOUR document destruction policies.

**REQUEST NO. 37.:**

Produce ALL DOCUMENTS which EVIDENCE, REFER, and/or RELATE TO Plaintiff (apart from documents produced to you by Plaintiff in this litigation).

**REQUEST NO. 38.:**

Produce ALL DOCUMENTS reflecting the data, reports, results, indexes, conclusions, and/or analysis YOU have gathered or collected or have had gathered or collected on YOUR behalf from social media monitoring about YOUR BABY CARRIERS, if any, from 2010 to the present.

**REQUEST NO. 39.:**

Produce ALL DOCUMENTS reflecting ANY social media monitoring topics and queries YOU have set up or had set up on YOUR behalf pertaining to YOUR BABY CARRIERS from 2010 to the present.

**REQUEST NO. 40.:**

Produce ALL online posts and/or comments, including, but not limited to social media posts, about which YOU are aware and/or YOU have observed, read,

monitored, downloaded, screen shot, and/or recorded in any manner claiming that YOUR BABY CARRIERS can cause or contribute to hip dysplasia from 2010 to the present, regardless of whether they have been taken down or deleted.

**REQUEST NO. 41.:**

Produce ALL social media posts made by YOU or any of YOUR employees on any Facebook, Twitter, Instagram, YouTube, or other social media account(s) or page(s) pertaining to YOUR BABY CARRIERS from 2010 to the present, regardless of whether those posts have been taken down or deleted.

**REQUEST NO. 42.:**

Produce ALL comments to ANY social media posts made by YOU or any of YOUR employees on any Facebook, Twitter, Instagram, YouTube, or other social media account(s) or page(s) RELATING TO YOUR BABY CARRIERS from 2010 to the present, regardless of whether those posts have been taken down or deleted.

**REQUEST NO. 43.:**

Produce ALL direct messages YOU have received on ANY social media websites, including but not limited to Facebook, Twitter, Instagram, and YouTube, RELATING TO YOUR BABY CARRIERS from 2010 to the present.

**REQUEST NO. 44.:**

For the time period of 2010 to present, produce ALL DOCUMENTS RELATING TO YOUR procedure(s) for categorizing and/or coding product complaints or calls about the quality of YOUR BABY PRODUCTS and/or YOUR BABY CARRIERS.

**REQUEST NO. 45.:**

Produce ALL DOCUMENTS RELATING TO any public opinion poll, focus group, survey, and/or marketing studies for the "Original" BabyBjörn baby carrier.

**REQUEST NO. 46.:**

Produce ALL DOCUMENTS RELATING TO any public opinion poll, focus group, survey, and/or marketing studies for YOUR BABY CARRIERS.

Dated: November 12, 2021

ANDRUS ANDERSON LLP

By: /s/ Lori E. Andrus
Lori E. Andrus

Lori E. Andrus (SBN 205816)
lori@andrusanderson.com
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474

*Attorneys for Plaintiff*